RENDERED: APRIL 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0018-MR

ELIZABETH VEENEMAN BATES,
M.D.                                                                                  APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE MARY M. SHAW, JUDGE
                        ACTION NO. 19-CI-006119


TED ENNENBACH AND HORMONE
HEALTH EXPRESS OF KENTUCKY,
P.S.C.                                                                                APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, McNEILL, AND EASTON, JUDGES.

McNEILL, JUDGE: Elizabeth Veeneman Bates, M.D. ("Dr. Bates") appeals from

orders of the Jefferson Circuit Court denying her motion for summary judgment

and granting summary judgment in favor of Ted Ennenbach ("Ennenbach") and

Hormone Health Express of Kentucky, P.S.C. ("HHE"), holding the parties'

indemnification agreement does not apply to Kentucky Board of Medical

Licensure ("KBML") proceedings relating to or arising from professional malpractice. Finding no error, we affirm.

## BACKGROUND

In 2015, Dr. Bates and Ennenbach entered a business venture to provide hormone optimization therapy to patients. Dr. Bates would provide the medical care while Ennenbach would provide facilities, equipment, and non-physician personnel through his management company, Body Shapes Medical Limited Liability Company ("management company"). The parties formed HHE, a professional service corporation, with Dr. Bates as president and sole shareholder. Dr. Bates then entered two contracts, an employment agreement with HHE and management company to provide administrative and patient care services, and an indemnification agreement with Ennenbach, management company, and HHE, which is the focus of this appeal.

The indemnification agreement provides in relevant part:

### I. INDEMNIFICATION

1.1    Shareholder, Director and Officer Indemnification. In consideration of Dr. Bates's services for and on behalf of HHE, Ennenbach, HHE and Management Company shall jointly and severally indemnify Dr. Bates from and against any and all damages, losses, claims, judgments, actions, proceedings, liabilities, taxes, penalties and expenses . . . alleged against, or incurred or suffered by, Dr. Bates by virtue of the fact that she is or was a shareholder, director or officer of HHE or arising from or relating to the

-2-

transactions contemplated by that certain Management Services Agreement between Management Company and HHE of even date herewith. . . . Without limitation of the foregoing, HHE, Ennenbach and Management Company shall jointly and severally indemnify Dr. Bates against any Claims for penalties or sanctions imposed against Dr. Bates or revocation or suspension of Dr. Bates's license to practice medicine in the Commonwealth of Kentucky . . . arising from any acts or omissions of Management Company or HHE or their agents or employees. The foregoing indemnification excludes Claims arising from or relating to professional malpractice by Dr. Bates or any matter involving Dr. Bates's negligence or material breach of this Agreement or any option agreement or buy-sell agreement entered into by the Parties.

In August 2015, the KBML began investigating Dr. Bates' use of Armour Thyroid to hyperstimulate the thyroid to promote weight loss in patients with normal thyroid functioning. This resulted in KBML restricting Dr. Bates' ability to "practice medicine in the context of hormone replacement and/or optimization therapy" indefinitely. Throughout the investigation, Ennenbach, HHE, and management company paid for Dr. Bates' defense but declined to continue doing so following her license restriction. In response, Dr. Bates filed suit in Jefferson Circuit Court to enforce the indemnification agreement.

Later, she moved for summary judgment arguing that Ennenbach and HHE breached the indemnification agreement by refusing to pay for her defense of the KBML action. The trial court denied the motion, finding that the indemnification agreement distinguished between KBML claims stemming from

-3-

Dr. Bates' mere affiliation with HHE, which were covered, and those directly related to the way she practiced medicine, which were not. The court noted the agreement specifically indemnified Dr. Bates from KBML actions "arising from any acts or omission of Management Company or HHE or their agents or employees." However, the KBML action did not arise from any act or omission of any other person or entity, but from Dr. Bates' patient care alone. Following the denial, Ennenbach and HHE moved for summary judgment which was granted. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper when the trial court determines that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 480 (Ky. 1991); CR[1] 56.03. The parties agree no genuine issues of material fact remain and summary judgment turns on a single question of contract interpretation: whether the agreement requires Ennenbach and HHE to indemnify Dr. Bates for the costs associated with the KBML action. "[T]he interpretation of a contract . . . is a question of law for the courts and is subject to *de novo* review." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

---

[1] Kentucky Rules of Civil Procedure.

# ANALYSIS

As an initial matter, we must first address the deficiency of Dr. Bates' appellate brief. Her argument section fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by RAP[2] 32(A)(4). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Because the record is small, and we have been able to determine her arguments were properly preserved, we will ignore the deficiency and proceed with the review.

The primary objective in construing a contract is to effectuate the intentions of the parties. *Cantrell Supply, Inc.*, 94 S.W.3d at 384 (citations

---

[2] Kentucky Rules of Appellate Procedure.

omitted).  A contract must be construed as a whole, giving effect to all parts and every word if possible.  *Id.* at 384-85 (citation omitted).  "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."  *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and citations omitted).  The parties agree the indemnification agreement is unambiguous; thus, we turn to its four corners and consider the ordinary meaning of its terms.

As correctly determined by the trial court, the agreement provides for blanket indemnification for all claims against Dr. Bates that arise from or relate to (1) her capacity as a shareholder, director, or officer of HHE and (2) "transactions contemplated by that certain Management Services Agreement between Management Company and HHE of even date herewith[.]"  It also provides for indemnification for "any Claims in connection with establishing or enforcing a right to indemnification" under the agreement.  None of these provisions applies to the KBML action.  The KBML action concerns Dr. Bates' conduct as a medical provider, not a shareholder, director, or officer of HHE, and the management

-6-

services agreement referenced in the indemnification agreement is not a part of the

record.[3]

The only relevant section of the indemnification agreement, as

admitted by Dr. Bates, is as follows:

> Without limitation of the foregoing, HHE, Ennenbach and Management Company shall jointly and severally indemnify Dr. Bates against any Claims for penalties or sanctions imposed against Dr. Bates or revocation or suspension of Dr. Bates's license to practice medicine in the Commonwealth of Kentucky . . . *arising from any acts or omissions of Management Company or HHE or their agents or employees.  The foregoing indemnification excludes Claims arising from or relating to professional malpractice by Dr. Bates* or any matter involving Dr. Bates's negligence or material breach of this Agreement or any option agreement or buy-sell agreement entered into by the Parties.

(Emphasis added.)

Under the plain language of this section, Dr. Bates is indemnified

against any claims concerning her license to practice medicine, which includes

KBML actions, "arising from any acts or omissions of Management Company or

HHE or their agents or employees."  However, the KBML action in this instance

arose solely from Dr. Bates' practice of medicine, not from any act or omission of

---

[3] A management services agreement dated June 17, 2015 is, however, in the record.  Even assuming this agreement is the one referenced in the indemnification agreement, the KBML action did not "arise from or relat[e] to the transactions contemplated" by the management services agreement.  The management services agreement is between HHE and management company and concerns administrative matters, not patient care.

anyone else. While Dr. Bates is an employee of HHE, when read in the context of the indemnification agreement as a whole, "employee," as used in this section refers to other employees of HHE and management company, not Dr. Bates. This interpretation is bolstered by the very next sentence which states: "The foregoing indemnification excludes Claims arising from or relating to professional malpractice by Dr. Bates or any matter involving Dr. Bates's negligence . . . ." Thus, Dr. Bates is only indemnified against licensure actions arising from acts or omissions of others, not her own. This indemnification does not apply to licensure actions concerning Dr. Bates' negligence or professional malpractice, which is the basis for the KBML action in this instance.

Dr. Bates argues this interpretation renders the clause concerning licensure actions meaningless, because any KBML action would necessarily arise from her practice of medicine. We disagree. Just as one example, pursuant to KRS[4] 311.595(10), the KBML may discipline a physician for making "a false statement in any document executed in connection with the practice of his profession[.]" If management company made a false statement in connection with advertising HHE's services, pursuant to the indemnification agreement, Dr. Bates would be indemnified against any KBML action because such action arose from acts or omissions of others.

---

[4] Kentucky Revised Statutes.

Finally, Dr. Bates contends the trial court made impermissible fact determinations in ruling on the motion for summary judgment. Again, we disagree. While the trial court recited, and even interpreted, the facts in its order granting summary judgment, these facts were irrelevant to its conclusion that the agreement did not require Ennenbach and HHE to indemnify Dr. Bates against the KBML action, which was purely a legal question.

In sum, because the indemnification agreement does not apply to licensure actions arising from or relating to professional malpractice by Dr. Bates, she cannot prove a breach of the agreement and the trial court did not err in denying her motion for summary judgment and granting summary judgment in favor of Ennenbach and HHE.

## **<u>CONCLUSION</u>**

Accordingly, the orders of the Jefferson Circuit Court are affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Laura E. Landenwich
Abigail V. Lewis
Louisville, Kentucky

BRIEF FOR APPELLEES:

John D. Cox
Scott D. Spiegel
Peterson S. Thomas
Louisville, Kentucky